UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH ADAMS,
    Plaintiff,

v.

CITY OF NEW HAVEN, DEAN M. ESSERMAN, *Chief of Police*, VARIOUS UNNAMED NEW HAVEN POLICE OFFICERS, SUPERVISORS OF VARIOUS UNNAMED NEW HAVEN POLICE OFFICERS,
    Defendants.

No. 3:14-cv-00778 (JAM)

**RULING GRANTING MOTION TO DISMISS**

It has long been the rule in federal courts that a municipality is not liable for the constitutional violations of its employees unless those violations resulted from a municipal policy, practice, or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–94 (1978). The Supreme Court made clear in *Monell* that municipalities are not vicariously liable in *respondeat superior* for the unconstitutional misconduct of their officials and employees. *Ibid.*

Plaintiff Joseph Adams seeks to hold defendant City of New Haven liable for the misconduct of its police officers when they allegedly wrongfully detained and abused him while in search of a fugitive murderer. Although plaintiff alleges detailed facts about his mistreatment by police officers, he alleges no facts at all about any policy, practice, or custom of the City of New Haven that led to this mistreatment. Instead, he insists that the Court should infer from the fact that he was mistreated that this mistreatment was the product of an unconstitutional policy,

1

practice, or custom of the City of New Haven. I reject this claim as contrary to the requirements for municipal liability under *Monell* and contrary to the requirement that a complaint set forth facts—apart from conclusory allegations or legal conclusions—that establish a plausible ground for relief. Accordingly, I will grant the municipal defendants' motion to dismiss.

### BACKGROUND

Plaintiff's amended complaint (Doc. #14) sets forth the following facts, which are accepted as true for purposes of this motion to dismiss. Just before midnight on October 21, 2013, plaintiff was enjoying a quiet evening at his apartment at 374-A Peck Street in New Haven when he heard a loud noise outside. When he opened his door and looked over the balcony, he saw two gun barrels; fearing that he was about to be robbed, he fled back inside his apartment. Plaintiff then heard the police shout at him to come back out. He complied, and the officers threw plaintiff to the ground in a violent manner, and they zip-tied his hands behind his back. In the meantime, the officers threw flash grenades into plaintiff's home, causing extensive damage to the property. Plaintiff was interrogated at gun point with the officers continually asking: "Where the fuck is he?" Doc. #14, ¶ 18. Plaintiff said there was no one else in his apartment. The officers threw furniture around while searching his apartment. Eventually, the officers realized that they had entered the wrong unit of the multi-family home in which plaintiff resides.[1] After detaining plaintiff for about two and half hours, the officers removed plaintiff's restraints and released him. At the end of the encounter, one officer mocked plaintiff on the basis of his perceived sexual orientation.[2]

---

[1] As indicated at oral argument, it appears that the police ended up arresting a suspected murderer and recovering a weapon in the apartment next door at 374-B Peck Street.
[2] As discussed at oral argument, the names of any officers who were there as part of a SWAT team that night at plaintiff's address are still unknown and are not recorded in any official police report, but the Corporation Counsel for the City of New Haven is cooperating with plaintiff's effort to identify any officers involved.

Counts One through Four, Six and Seven of the complaint allege claims of false arrest, unreasonable use of force, discrimination, intentional infliction of emotional distress, and assault-and-battery against the various unnamed police officer defendants. None of these claims are presently at issue in this motion to dismiss.

The remaining claims of the complaint are *Monell* claims of liability alleged against the City of New Haven and Chief of Police Dean M. Esserman.[3] Counts Eight through Eleven allege that the City had inadequate training, inadequate hiring, inadequate supervision, and otherwise inadequate policies necessary to prevent constitutional violations by the New Haven police. All of these *Monell* claims have one thing in common: they fail to allege any particular facts about the City's policies (or lack of policies), much less to suggest how these policies (or lack of policies) were constitutionally inadequate. The municipal defendants have moved to dismiss.[4]

## DISCUSSION

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Moreover, "'[a]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to survive a motion to dismiss. *Ibid.* (quoting *Harris v. Mills*, 572

---

[3] Because plaintiff sues Chief Esserman in his official capacity only, the claim against him must proceed as if stated against the City. *See, e.g.*, *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn. 2008) (citing *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)).

[4] Plaintiff also alleged a claim in Count Five of negligent infliction of emotional distress against the City of New Haven and Chief Esserman, but he has withdrawn that claim against them in response to the defendants' motion to dismiss, and therefore I will grant the motion to dismiss Count Five as to the City and the Police Chief but not as to the individual police officers who are charged in this count.

F.3d 66, 72 (2d Cir. 2009)); *see also Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (noting that court is "not bound to accept as true a legal conclusion couched as a factual conclusion" or "to accept as true allegations that are wholly conclusory") (citations and internal quotation marks omitted). In short, my role in reviewing a motion to dismiss is to determine whether the complaint—apart from any of its conclusory allegations—sets forth sufficient facts to state a plausible claim for relief.

The Supreme Court has elaborated on the "plausibility" standard for evaluating a motion to dismiss:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

As noted above, a municipality may not face constitutional liability under 42 U.S.C. § 1983 by reason of *respondent superior* for the actions of individual municipal officers or employees. Instead, as the Supreme Court made clear in its landmark decision in *Monell,* a municipality is liable only for its own illegal acts, and a plaintiff must establish that the municipality itself had no less than a policy, custom, or practice that was intended to or that was deliberately indifferent to constitutional rights, and that this policy, custom, or practice actually caused the violation by municipal actors of plaintiff's constitutional rights. *See, e.g.*, *Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011). In the ordinary course, plaintiffs who seek to assert municipal liability under *Monell* often claim that municipalities have acted with deliberate indifference to the constitutional rights of their populace by failing to adequately train, supervise,

4

or hire their police officers or by otherwise failing to adopt policies that are necessary to prevent their officers from violating constitutional rights.

### *Inadequate Training (Count Eight)*

Plaintiff contends that defendants did not adequately train the officers who violated plaintiff's rights. An inadequate training program "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The Supreme Court has cautioned that the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program," and "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 390–91. Because of the "nebulous" nature of a failure-to-train claim and the degree to which inadequate training is "removed from the constitutional violation" itself, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S. Ct. at 1359 (internal quotation marks omitted).

The Second Circuit has identified three prerequisites for a deficient training program to amount to "deliberate indifference" as required for a *Monell* claim. First, a plaintiff must show that "a policymaker knows to a moral certainty that her employees will confront a given situation." *Jenkins v. City of New York*, 478 F.2d 76, 94 (2d Cir. 2007) (internal quotation marks omitted). Second, a plaintiff must show that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or . . . there is a history of employees mishandling the situation." *Ibid.* Lastly, a plaintiff must show that "the

5

wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Ibid.*

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Nevertheless, the Supreme Court has "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 1361 (quoting *Bryan Cty.*, 520 U.S. at 409)). For example, the Court has hypothesized that a municipality might be liable if it failed to train armed police officers "at all" regarding "the constitutional limits on the use of deadly force." *Id.* at 1363; *see also id.* at 1361 ("Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights.") (quoting and discussing *Bryan Cty.*, 520 U.S. at 409).

What facts does a plaintiff asserting a § 1983 failure-to-train claim need to plead in order to withstand a motion to dismiss? Over a decade ago, the Second Circuit suggested that such plaintiffs "need only plead that the city's failure to train caused the constitutional violation," in view of the fact that "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004). Since then, however, the pleading standards have been "substantially reworked" in *Twombly* and *Iqbal*, and so district courts "have

generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Simms v. City of New York*, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. 2011), *aff'd*, 480 F. App'x 627 (2d Cir. 2012). The Second Circuit has endorsed this approach (albeit in an unpublished disposition), stating that, "[w]hile it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, . . . this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms*, 480 F. App'x at 631 n.4.

Accordingly, "[t]o allege a failure to train claim, a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, 2015 WL 1379652, at *22 (S.D.N.Y. 2015). A failure-to-train claim is properly dismissed where the complaint lacks "enough factual material . . . for the court to reasonably infer that the police misconduct . . . allege[d] was the result of anything other than the individual acts of the arresting officers." *Simms*, 2011 WL 4543051, at *2.

Here, plaintiff's failure-to-train claim is not facially plausible. Plaintiff has made no more than a general allegation that defendants "failed to adequately train and instruct [police] officers regarding the Fourth and Fourteenth Amendment rights of persons." Doc. #14, ¶ 75. "While this assertion does specify what type of training the officers lacked, it does not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency." *Simms*, 2011 WL 4543051, at *3.

Moreover, plaintiff has failed to plead facts indicating that this inadequate training amounted to deliberate indifference. Plaintiff does not allege the existence of a pattern of similar constitutional violations. Nor does he allege enough facts to indicate that this is one of those rare cases where a pattern of similar violations might not be necessary to show deliberate

7

indifference. The Supreme Court has confined that narrow range of cases to those instances where a municipality has given no training whatsoever regarding a particular constitutional limitation. *See Connick*, 131 S. Ct. at 1363. Here, plaintiff does not allege that the defendants provide no training about the Fourth and Fourteenth Amendments. Instead, he simply alleges that the training was inadequate is some unspecified way. *See Harper v. City of New York*, 424 F. App'x. 36, 39 (2d Cir. 2011) (affirming dismissal of complaint because plaintiff's allegations using "the words 'pattern' or 'cooperation' is insufficient to cure facts that fail to establish a policy undertaken by the City in violation of a plaintiff's constitutional rights"); *Missel v. Cty. of Monroe*, 351 F. App'x 543, 546 (2d Cir. 2009) (affirming dismissal of failure-to-train complaint based on "conclusory and speculative assertions" and for lack of facts alleging that municipal defendants "were on notice of and took no action in response" to sheriff's misconduct or that the officer "had a history of such behavior that Defendants deliberately ignored").

      Ultimately, as for all of his *Monell* claims, plaintiff insists that the City's liability should be inferred from the egregious nature of what the individual officers did. But neither *Iqbal*'s rule for pleading nor *Monell*'s rule for liability allows for such bootstrap inferences that would relieve a plaintiff not only from having to allege and show deficiencies in a municipal training program that were the product of a city's deliberate indifference but also from having to allege and show that these deficiencies actually caused the violation of a plaintiff's constitutional rights. To the contrary, the Supreme Court "unequivocally requires … that the factfinder's inferences of inadequate training and causation be based on more than the mere fact that the misconduct occurred in the first place." *Amnesty Am.*, 361 F.3d at 130 (discussing and citing *City of Canton*, 489 U.S. at 390–92); *see also Jenkins*, 478 F.3d at 95 (rejecting claim that "a lack of adequate police training is established by the fact that [plaintiff] was arrested without probable cause,"

because "[t]he mere fact that [plaintiff] was falsely arrested, without more, does not show that the City's training program is inadequate," and "[a] training program is not inadequate merely because a few of its graduates deviate from what they were taught"). Plaintiff's circular reasoning—to infer the existence of a municipal policy merely from the fact that one or more officers broke the law—would well exceed the limits prescribed by *Monell* and result in municipal liability for practically all constitutional misconduct by any municipal employee. In sum, plaintiff has not pled a plausible failure-to-train claim.

### *Inadequate Hiring (Count Nine)*

Plaintiff contends that defendants were deliberately indifferent to his constitutional rights in the manner that they hired the police officers who allegedly abused him. It is possible for a litigant to establish § 1983 liability based on "the inadequacy of an official's review of a prospective applicant's record." *Bryan Cty.*, 520 U.S. at 410. But such claims are very hard to demonstrate. Like failure-to-train claims, an inadequate hiring claim requires a showing of deliberate indifference. In this context, deliberate indifference exists "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Id.* at 411. And not just any constitutional injury will suffice. Rather, liability "depend[s] on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412.

Plaintiff falls well short of this standard and concedes as much in his response to defendants' motion to dismiss. In view that he has yet even to identify the individual officers who appeared at his home, he is no position to allege in good faith that they only became police

9

officers by reason of a constitutionally infirm hiring processes. In sum, plaintiff has not pled a plausible inadequate hiring claim.

### *Deliberately Indifferent Supervision (Count Ten)*

Plaintiff next claims that defendants supervised the officers with deliberate indifference to plaintiff's constitutional rights. An inadequate supervision claim requires a plaintiff to prove (1) that defendants "should have known their inadequate supervision was so likely to result in the alleged deprivations so as constitute deliberate indifference"; that (2) there were "obvious and severe deficiencies in the . . . defendants' supervision that reflect a purposeful rather than negligent course of action"; and (3) that there was "a causal relationship between the failure to supervise and the alleged deprivations to plaintiffs." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007).

Here, plaintiff has not alleged any facts about the nature of defendants' supervisory practices that would indicate obvious and severe deficiencies, much less that defendants were deliberately indifferent to these deficiencies and that it was these deficiencies that were the cause of plaintiff's mistreatment by the officers at his home. He does not allege, for example, that there were previous complaints of civil rights violations that would have put defendants on notice about the propensity of their officers to engage in the kind of misconduct alleged by plaintiff here. Plaintiff's inadequate supervision claim merely "tenders naked assertion[s] devoid of further factual enhancement." *See Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted). In sum, plaintiff has not pled a plausible inadequate supervision claim.

### *Failure to Adopt Policies (Count Eleven)*

In catch-all fashion, plaintiff lastly complains that defendants were deliberately indifferent when they failed to adopt policies to prevent their officers from violating

constitutional rights. It is true that a municipality may be liable under *Monell* when it is "faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds*, 506 F.3d at 192 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of *Monell*." *Ibid.*

Here, however, the complaint fails to describe what policies were not adopted and should have been adopted. Nor does plaintiff allege any facts indicative of a past pattern of similar misconduct that was ignored by defendants, much less facts suggesting that defendants' indifference was the cause of the officers' abuse of plaintiff at his home. In sum, plaintiff has not pled a plausible claim of defendants' failure to adopt policies to prevent violations of constitutional rights.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Doc. #18) is GRANTED. Count Five is DISMISSED as to the City of New Haven and Chief of Police Dean M. Esserman, and Counts Eight, Nine, Ten, and Eleven are DISMISSED in their entirety. If plaintiff wishes to re-plead any claims against the City of New Haven and the Chief of Police, plaintiff may file a motion showing what facts—not mere legal conclusions—will be sufficiently alleged and why those facts could not have been alleged at an earlier time.

It is so ordered.

Dated at Bridgeport this 8th day of April 2015.

                                            /s/ *Jeffrey Alker Meyer*
                                            Jeffrey Alker Meyer
                                            United States District Judge