UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

Joseph Adams
        Plaintiff,

                                                              CIVIL ACTION No.
                                                              3:14-cv-00778 (JAM)

v.

Sergeant Karl Jacobsen, Officer Martin Feliciano,
Detective Paul DeAndrea, Detective Marcin Podsiad,
Lieutenant Nicholas Marcuccio, Officer Robert Mencucci,
Officer Ryan Przybylski, Officer Christopher Cacela,
Sergeant Jason Rentkowicz, Officer Richard Cotto,
Officer William Hoffman, Officer Robert Hwang,
Officer Luis Lopez, Officer Raul Pereira,
Officer Ross Van Nostrand, Sergeant John Healy.
        Defendants                                               July 28, 2015

_____

## AMENDED COMPLAINT

      Plaintiff Joseph Adams by his undersigned counsel, for his Complaint, hereby alleges, on knowledge as to his own conduct and otherwise on information and belief, as follows:

## THE PARTIES

1. Plaintiff Joseph Adams ("Mr. Adams") is a natural person residing in New Haven, Connecticut and is a United States citizen. The Plaintiff is African-American of race and black of color.

2. Defendant Sergeant ("Sgt.") Karl Jacobsen is a natural person and holds the rank of Sergeant with the New Haven Police Department ("NHPD").  At all times relevant hereto, Sergeant Jacobsen was the Officer in Charge of the NHPD's Criminal Intelligence Unit ("CIU") and was acting under color of state law.

3. Defendant Officer ("Ofc.") Martin Feliciano is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Feliciano was a member of the CIU and was acting under color of state law.

4. Defendant Detective ("Det.") Paul DeAndrea is a natural person and holds the rank of Detective with the NHPD.  At all times relevant hereto, Det. DeAndrea was a member of the CIU and was acting under color of state law.

5. Defendant Detective ("Det.") Marcin Podsiad is a natural person and holds the rank of Detective with the NHPD.  At all times relevant hereto, Det. Podsiad was a member of the CIU and was acting under color of state law.

6. Lieutenant ("Lt.") Nicholas Marcuccio currently holds the rank of Lieutenant with the NHPD.  However, at all times relevant hereto Marcuccio held the rank of Sergeant and was the Commander of the Special Weapons and Tactics ("SWAT") Team of the New Haven Police Department.  At all times relevant hereto, Sgt. Marcuccio was acting under color of state law.

7. Defendant Officer ("Ofc.") Ryan Przybylski is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Przybylski was acting under color of state law.

8. Defendant Officer ("Ofc.") Christopher Cacela is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Cacela was acting under color of state law.

9. Defendant Officer ("Ofc.") Jason Rentkowicz is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Rentkowicz was acting under color of state law.

10. Defendant Officer ("Ofc.") Richard Cotto is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Cotto was acting under color of state law.

11. Defendant Officer ("Ofc.") Carlos Conceicao is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Conceicao was acting under color of state law.

12. Defendant Officer ("Ofc.") William Hoffman is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Hoffman was acting under color of state law.

13. Defendant Officer ("Ofc.") Robert Hwang is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Hwang was acting under color of state law.

14. Defendant Officer ("Ofc.") Luis Lopez is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Lopez was acting under color of state law.

15. Defendant Officer ("Ofc.") Raul Pereira is a natural person and is a sworn officer of the NHPD.  At all times relevant hereto, Ofc. Pereira was acting under color of state law.

16. Defendant Officer ("Ofc.") Ross Van Nostrand is a natural person and is a sworn officer of the NHPD. At all times relevant hereto, Ofc. Van Nostrand was acting under color of state law.

17. Defendant Sergeant ("Sgt.") John Healy is a natural person and holds the rank of Sergeant with the New Haven Police Department ("NHPD"). At all times relevant hereto, Sgt. Healy was acting under color of state law.

## JURISDICTION AND VENUE

18. This court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case is one that arises under federal law, specifically 42 U.S.C. §§ 1981, 1983 as well as the United States Constitution, specifically the Fourth and Fourteenth Amendments.

19. This court may exercise supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. §1367 because the pendent state law claims arise from the same nucleus of operative fact as the federal claims.

20. Venue is proper because all of the events, actions, or omissions giving rise to the claims occurred in this District.

## THE NEW HAVEN POLICE DEPARTMENT'S ("NHPD") MIDNIGHT RAID ON THE PLAINTIFF'S HOME

21. On or about October 21, 2013 Mr. Adams was enjoying a quiet evening at his home, 374-A Peck Street, New Haven, CT.

22. At approximately 11:59PM Mr. Adams heard a loud noise coming from outside his second floor apartment. Plaintiff opened his door and looked over the balcony, at which time he saw two gun barrels.

23. Upon seeing the two gun barrels, Mr. Adams thought he was about to be the victim of a violent robbery and fled to the inside of his apartment towards the bedroom.

24. The Plaintiff then heard a large group of individuals force their way into his apartment. Upon information and belief, these individuals were Defendants Lt. Marcuccio, Sgt. Healy, Ofc. Mencucci, Ofc. Przybylski, Ofc. Cacela, Ofc. Rentkowicz, Ofc. Cotto, Ofc. Hoffman, Ofc. Hwang, Ofc. Lopez, Ofc. Pereira, Ofc. and Van Nostrand (collectively, "entry Defendants").

25. Mr. Adams then heard a voice shout "New Haven Police, come the [expletive] down!" Adams began to slowly descend down the stairs of his apartment with his back to the officers and his hands on the back of his head. The Plaintiff had his back to the officers at all times.

26. Before Mr. Adams could reach the bottom of the stairs, three or four New Haven Police Officers grabbed the Plaintiff and threw him to the ground in a most violent and hostile manner. This caused Mr. Adams to experience an excruciating pain in the right side of his neck.

27. While Mr. Adams was face-down on the ground, one of the entry Defendants placed his knee on the Adam's back and proceeded to zip-tie the Plaintiffs hands tightly behind his back.

28. While Mr. Adams lay prone with his hands tied behind his back he lifted his head and noticed that his sofa and carpet were burning as a result of one of the entry Defendants throwing a flash grenade into his home.

29. At this time Mr. Adams heard another extremely loud noise, which was the result of a second flash bomb being thrown into his home by one of the entry Defendants.

30. Mr. Adams then heard many of the entry Defendants run up his stairs. He then heard them kicking in all of the doors in his home.

31. Mr. Adams was then interrogated at gun-point by several of the entry Defendants. The officers continuously asked "Where the [expletive] is he?"

32. Mr. Adams responded to the officers by telling them that there was nobody else in his apartment and that he had not let anyone in. When asked who lived in the apartment Adams informed the officers that it was himself, his sister, and her daughter.

33. Mr. Adams then several entry Defendants throwing his furniture around as they searched the apartment for something. At this time, Mr. Adams noticed water leaking through his ceiling from a pipe that had been burst by one of the flash grenades.

34. A group of entry Defendants again asked the Plaintiff "where is he?" The Plaintiff continued to inform the officers that he did not know who they were talking about and that nobody else was there with him. Plaintiff then mentioned to the officers that they should look in the apartment next door because he was aware that his neighbor had previously been convicted of criminal offenses.

35. Two entry Defendants then walked over to another officer and asked him if he was sure they were in the right house. The officer responded in the affirmative. At this time approximately three (3) of the entry Defendants went outside to rummage through the Mr. Adam's trash. Three other entry Defendants stayed with Mr. Adams and kept him restrained with his hands behind his back.

36. Mr. Adams then heard someone from outside using a megaphone declare, "Attention residents of 374 Peck Street, please exit your homes."

37. Mr. Adams saw his neighbors coming out of their homes, and heard one of his neighbors tell officers outside that they were probably looking for her son.

38. Mr. Adams remained detained by the officers for another thirty (30) minutes with the painful zip ties on his wrists and his hands behind his back.

39. A Detective Vazquez then came into the apartment and announced that he was in charge of the investigation and that the officers should remove the straps from the Plaintiff's wrists.

40. The officers then used bolt cutters, pliers, and a butterfly knife in an attempt to remove the restraints that had been placed on the Plaintiff. This removal process was extremely painful for the Plaintiff, as the efforts of the officers made the zip ties even tighter and injured the Plaintiff's wrists. After much effort, the officers were finally able to remove the restraints.

41. As the entry Defendants were exiting Mr. Adam's apartment, Adams heard an officer mocking him for being a gay man by using a histrionic feminine tone.

42. Upon information and belief, Defendants Sgt. Jacobsen, Ofc. Feliciano, Det. DeAndrea, and Det. Podsiad were responsible for identifying the proper residence for the NHPD to raid on the night of October 21, 2013.

43. Upon information and belief, Defendants Sgt. Jacobsen and Det. DeAndrea instructed the SWAT team to conduct a raid on 374-A Peck Street.

FIRST CLAIM FOR RELIEF

FALSE ARREST

(AS TO ALL DEFENDANTS)

44. Plaintiff realleges Paragraphs 1-43.

45. At all times relevant hereto, the Defendants were engaged in their sworn duties as New Haven Police Officers and were acting under color of state law.

46. Defendants Sgt. Jacobsen, Det. DeAndrea, Ofc. Feliciano, and Det. Podsiad did not have probable cause to identify the Plaintiff's apartment as the proper premises to be raided by the NHPD SWAT team. The identification of 374-A Peck Street was objectively unreasonable given the circumstances recited above.

47. Defendants Sgt. Jacobsen and Det. DeAndrea did not have probable cause to direct the SWAT team to arrest and/or seize the Plaintiff, or to raid his apartment. The arrest/seizure of Mr. Adams was objectively unreasonable given the circumstances recited above.

48. The aforementioned conduct of the entry Defendants caused the violation of Plaintiff's Fourth Amendment rights, as incorporated by the Fourteenth Amendment, because they

either apprehended the plaintiff, took him into custody, and restricted his freedom of movement for an extended period of time without a valid warrant or probable cause.

49. The aforementioned conduct of Defendants Sgt. Jacobsen, Ofc. Feliciano, Det. DeAndrea and Det. Podsiad caused the violation of Plaintiff's Fourth Amendment rights, as incorporated by the Fourteenth Amendment, because they caused the Plaintiff to be arrested/apprehended by virtue of their identification of the Plaintiff's apartment as the residence to be raided by the SWAT team.

50. As a result of the conduct of the Defendant officers described above, the plaintiff has suffered actual damages including property damage, physical injuries, and emotional injuries.

SECOND CLAIM FOR RELIEF

UNREASONABLE USE OF FORCE

(AS TO DEFENDANTS SGT. HEALY, OFCS. MENCUCCI, PRZYBYLSKI, CACELA, RENTKOWICZ, COTTO, HOFFMAN, HWANG, LOPEZ, PEREIRA, VAN NOSTRAND).

51. Plaintiff realleges Paragraphs 1-43.

52. At all times relevant hereto, the entry Defendants were engaged in their sworn duties as New Haven Police Officers and were acting under color of state law.

53. As a result of the conduct of the entry Defendants, Mr. Adams' freedom of movement was terminated by means intentionally applied.

54. Once the Defendants identified themselves as law enforcement officers the Plaintiff did not attempt to flee and never posed a threat to the officers' health or safety. Plaintiff was unarmed at all times relevant hereto and does not keep any weapons in his home.

55. The conduct by the entry Defendants of throwing the Plaintiff to the ground, placing a knee into his back, and restraining his hands was objectively unreasonable given the circumstances.

56. The conduct by the entry Defendants of deploying two (2) flash grenades inside Mr. Adam's apartment after he had been restrained was objectively unreasonable given the circumstances

57. As a result of the entry Defendants' unlawful conduct the Plaintiff has suffered actual damages.

58. The force used by the entry Defendants demonstrated a deliberate and callous indifference to the Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments.

FIFTH CLAIM FOR RELIEF

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(AS TO ALL DEFENDANTS)

59. Plaintiff realleges paragraphs 1-47.

60. At all times relevant hereto, all of the Defendants were engaged in their sworn duties as New Haven Police Officers and were acting under color of state law.

61. The aforementioned conduct of Defendants Sgt. Jacobsen, Det. DeAndrea, Ofc. Feliciano, and Det. Podsiad was negligent in that they mistakenly and erroneously identified the Plaintiff's residence as the proper resident for the SWAT team to raid. That error by the Defendants resulted in the unlawful seizure of the Plaintiff's person for a period of time.

62. Defendants Sgt. Jacobsen, Det. DeAndrea, Ofc. Feliciano, and Det. Podsiad's failure to properly and accurately ascertain which residence should have been entered and which person to arrest/detain constitutes negligent, extreme, and outrageous conduct.

63. Defendants Sgt. Jacobsen, Det. DeAndrea, Ofc. Feliciano, and Det. Podsiad's negligent, extreme, and outrageous conduct is the proximate cause of severe emotional distress suffered by the Plaintiff.

64. The mocking, harassing, and discriminatory behavior exhibited towards the Plaintiff by one of the entry Defendants is the actual and proximate cause of severe emotional distress suffered by the Plaintiff.

SIXTH CLAIM FOR RELIEF

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(AS TO DEFENDANTS SGT. HEALY, OFCS. MENCUCCI, PRZYBYLSKI, CACELA, RENTKOWICZ, COTTO, HOFFMAN, HWANG, LOPEZ, PEREIRA, VAN NOSTRAND)

65. Plaintiff realleges paragraphs 1-47.

66. The act of using two (2) flash grenades inside Mr. Adams' apartment, after he was subdued, was extreme and outrageous.

67. The entry Defendants' intentional, extreme, and outrageous conduct is the proximate cause of severe emotional distress suffered by the Plaintiff.

68. The mocking, harassing, and discriminatory behavior towards the Plaintiff by one of the entry Defendants was intentional, and was the actual and proximate cause of severe emotional distress suffered by the Plaintiff.

SEVENTH CLAIM FOR RELIEF

ASSAULT AND BATTERY

(AS TO DEFENDANTS SGT. HEALY, OFCS. MENCUCCI, PRZYBYLSKI, CACELA, RENTKOWICZ, COTTO, HOFFMAN, HWANG, LOPEZ, PEREIRA, VAN NOSTRAND)

69. Plaintiff realleges paragraphs 1-47.

70. The entry Defendants assaulted Mr. Adams when they intentionally and knowingly injured and detained him upon entering his home. This conduct caused the Plaintiff to fear for his safety and experience immediate apprehension of physical violence upon him at the hands of the Defendants.

71. Defendant officers committed battery when they struck the Plaintiff in a harmful and offensive manner as he was walking backwards down the stairs with his hands behind his head.

72. Defendant officers were not privileged to use the amount of force that they used against the Plaintiff.

EIGHTH CLAIM FOR RELIEF

NEGLIGENCE

(AS TO DEFENDANTS SGT. JACOBSEN, OFC. FELICIANO, DET. DEANDREA, DET. PODSIAD)

73. Plaintiff realleges Paragraphs 1-47.

74. At all times relevant hereto, Defendants Sgt. Jacobsen, Ofc. Feliciano, Det. DeAndrea, and Det. Podsiad owed a constitutional duty to the Plaintiff to keep him free from warrantless and unreasonable search and seizures.

75. Defendants Sgt. Jacobsen, Ofc. Feliciano, Det. DeAndrea, and Det. Podsiad breached their duty to the Plaintiff when they carelessly identified his home as the premises for the SWAT team to raid and search,

76. The breach of duty described in Paragraph 75 is the proximate cause of injuries and property damage suffered by the Plaintiff.

WHEREFORE, Plaintiff prays for judgment:

A. A judgment against the Defendants for compensatory damages in an amount that this court deems just and fair;

B. A judgment against the Defendants for punitive damages in an amount that this court deems just and fair;

C. An award of costs, expenses, and attorney's fees fees pursuant to 28 U.S.C. § 1988;

D. An award of prejudgment interest in an amount deemed at time of trial to be just and proper;

E. Such other relief that this Court considers fair and equitable.

        PLAINTIFF,
        JOSEPH ADAMS


By:_____/s/_____
    William J. Whewell, Esq
    Fed. Bar. No. ct29619
    Rosenberg & Press, LLC
    2051 Main Street
    Stratford, Connecticut 06615
    (t) (203) 870-6700
    (f) (203) 870-6701
    (e) whewell.william@gmail.com
    His Attorneys